IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>APPROXIMATELY $158,000.00 IN U.S. CURRENCY,<br><br>        Defendant. | 1:12 – CV - 01260 AWI SMS<br><br>**ORDER DENYING CLAIMANT'S MOTION TO DISMISS**<br><br>(DOC. 10) |

## INTRODUCTION

The government has filed a verified complaint seeking forfeiture of approximately $158,000.00 seized from a yellow F.J. Cruiser registered to James Choe and driven by Lyndon Ahn. The forfeiture sought by the government is premised on alleged violations of 21 U.S.C. § 881(a)(6) as proceeds traceable to the exchange of a controlled substance and 31 U.S.C. §§ 5316, 5317 and 5332 as a monetary instrument of more than $10,000.00 transported to a place in the United States from a place outside the United States without report to the Secretary of Treasury. Claimants, Steve Yun Lee and James

Choe, now seek an order dismissing the government's forfeiture complaint pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6).

## FACTS AND PROCEDURAL BACKGROUND[1]

On February 22, 2012, Fresno County Sheriff Detectives Israel Rubalcava and Jake Jensen initiated a traffic stop on a yellow Toyota F.J. Cruiser based on the vehicle having tinted windows, which the government claims is in violation of California Vehicle Code § 26708.5. Detective Jensen made contact with Lyndon Ahn, the sole occupant of the vehicle. As Mr. Ahn gathered his license and registration information, Detective Jensen observed two cellular phones in the vehicle's front passenger seat and a third in a cup holder in the center console. When asked, Mr. Ahn disclosed that the vehicle belonged to James Choe. As Mr. Ahn handed his license and registration information to Detective Jensen, the detective noticed that Mr. Ahn's hand was trembling. Mr. Ahn informed Detective Jensen that he was travelling from Sacramento to Los Angeles after a single day stay in Sacramento where Mr. Ahn visited a friend who had recently moved to a new place.

Detective Jensen asked Mr. Ahn as to whether there were weapons, narcotics, or large sums of money inside the vehicle. Mr. Ahn denied the presence of any of the three items. After Detective Rubalcava wrote Mr. Ahn a citation, Detective Jensen received Mr. Ahn's consent to search the vehicle and discovered a cardboard box, a duffel bag, and an orange and blue backpack containing two foil wrapped and vacuum sealed

---

[1] The factual basis is taken from the verified complaint and supplemented by Declarations in Support of Government's Opposition to Motion to Dismiss for purposes of identifying the officers involved in the transaction.

packages. Detective Jensen asked Mr. Ahn what the contents of the vacuum sealed packages were. He replied, "I think it's money." Detective Jensen then called Detective Philip Lodge and requested that he and his narcotic detection canine "Tag" come to the stop's location to determine the presence of any controlled substances. Detective Lodge and "Tag" performed an exterior and interior search of the vehicle. "Tag" gave a positive alert to the odor of narcotics in the interior cargo area, the cardboard box and the backpack.

After a positive alert for narcotics, Detectives Jensen and Rubalcava opened the two vacuum sealed packages and discovered two large bundles of currency amounting to $158,000.00 in U.S. currency.

Mr. Ahn told the detectives that the money did not belong to him but belonged to "a friend of his uncle," who goes by the name of Young Kim. Mr. Kim had provided the money to Mr. Ahn with instructions to deposit the money in a bank in Los Angeles. When asked which bank he intended to deposit the money in, Mr. Ahn replied that he was unsure. Mr. Ahn indicated that he was going to deposit the money in Los Angeles rather than Sacramento because "that is how he does business." Mr. Ahn told detectives that he is a real estate broker and that the money was to go toward a payment on real property in Los Angeles. Mr. Ahn indicated that there was about $150,000.00 in the packages. Mr. Ahn claimed to know that it had to be at least that amount "because that is the minimum you would need to put a down payment to purchase house."

Mr. Ahn indicated that Mr. Kim had brought the money to the United States from Korea, where Mr. Kim is a businessman. Mr. Ahn claims that Mr. Kim had told him that Mr. Kim brought the money to the United States in a suitcase tucked between his clothes.

At this point the Detectives informed Mr. Ahn that the money was to be seized and provided him with Asset Forfeiture Proceeding forms and a Claim Opposing Forfeiture form.

On May 4, 2012, James Choe and Steven Yun Lee filed claims to the defendant currency. Steven Yun claims to be owner of 85% of the defendant currency and James Choe claims to be owner of the remaining 15%.

## LEGAL STANDARD

Rule E of the Supplemental Rules for Admiralty and Maritime Claims applies to actions in rem. Fed.R.Civ.P. Supp. R E(1).[2] Rule E requires that complaint's in forfeiture in rem proceedings state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading. Fed.R.Civ.P. Supp. R E(2)(a). To sufficiently state a claim for relief and survive a Rule 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the

---

[2] The advisory committee notes to Rule G of the Supplemental Rules for Admiralty and Maritime Claims specifies that Rule E has been amended to reflect the adoption of Rule G. To the extent that Rule E does not conflict with Rule G, it applies to this action. Fed.R.Civ.P. Supp. R G Advisory Committee Notes Sub.(1). For purposes of sufficiency of the pleading both Rules G and E(2)(A) articulate the same standard. (i.e. The complaint must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.)

speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id* . Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal ,*556 U.S. 662, 678 (2009) (internal quotation marks omitted).

A claimant with standing may move for dismissal of an in rem forfeiture action under Rule 12(b). Fed.R.Civ.P. Supp. R G(8)(b)(i). The sufficiency of the complaint is governed by Rule G(2). Fed.R.Civ.P. Supp. R G(8)(b)(ii).

Rule G of the Supplemental Rules for Admiralty and Maritime Claims governs forfeiture actions in rem arising from a federal statute. Fed.R.Civ.P. Supp. R G(1). Rule G requires that a complaint seeking forfeiture: (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and – if different – its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Fed.R.Civ.P. Supp. R G(2)(a-f).

In this action, Claimants dispute only the government's ability to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Thus, in order to survive the motion to dismiss the

government need only have alleged sufficient facts to create a reasonable belief that the government would be able to demonstrate the forfeitability of the property in question at trial.[3]

Under the Federal Rules of Civil Procedure, Rule 12(b)(6), a claim may be dismissed because of a plaintiff's "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *see also Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

---

[3] The reasonable belief standard applies here where the court rules on a motion to dismiss pursuant to Rule 12(b)(6). Several other standards exist for *in rem* forfeiture cases outside of the motion to dismiss context:
    First, the government must have probable cause at the time of seizure to believe that the property is subject to forfeiture and the seizure must be made pursuant to lawful arrest or search (or an exception to the 4th Amendment's warrant exception applies) in order to seize the property. 18.U.S.C. 981(b)(2)(B). The government may only use evidence gathered before the seizure to meet the probable cause standard. Probable cause to seize may appropriately be contested in a motion for summary judgment.
    Second, the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes in order to institute forfeiture proceedings. 19 U.S.C. 1615; *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir. 2009). The government may only use evidence gathered before the institution of the action to meet the probable cause standard. *id.* Probable cause to institute an action may appropriately be contested in a motion for summary judgment.
    Third, the government must establish, by a preponderance of the evidence, that the property is subject to forfeiture and that there was a substantial connection between the property and the alleged offense in order to prevail at trial. 18 U.S.C. 938(c)(1, 3). The government may use evidence gathered after the filing of the complaint to satisfy its burden at trial. 18 U.S.C. 983(c)(2).

support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)."[A] complaint should not be dismissed unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California,* 509 U.S. 764, 811 (1993).

The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). However, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). Further, although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint. The Ninth Circuit provides for "the 'incorporation by reference' doctrine, which permits a court to take into account documents whose contents are alleged in a complaint and whose authenticity no party

questions, but which are not physically attached to the plaintiff's pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).[4]

## DISCUSSION

A. The Requirement Of Probable Cause To Institute Forfeiture Of The $158,000 In U.S. Currency Does Not Apply In A Motion To Dismiss For Failure To State A Claim Context

     Preliminarily the court notes that the claimants argue that this Court should apply the standard set by the 9th Circuit in *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1167-1168 (9th Cir. 2008), requiring a showing of probable cause for the institution of forfeiture proceedings. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Claimant's Motion to Dismiss p. 2. The probable cause standard articulated in *$493,850.00* was applied at the summary judgment level. As discussed above, the complaint need only state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. Accordingly, this court will not hold the government to the higher standard of probable cause rather than determining if the court has a reasonable belief that the government could show forfeitability at trial based only on the face of the complaint.

     Title 19 of the United States Code § 1615, requires that probable cause be shown for the institution of forfeiture proceedings. 19 U.S.C. § 1615; *see United States v.*

---

[4] As far as the complaint incorporates by reference facts later submitted to this court in documents 20-1, 20-2, and 20-3, those facts are considered by the court. However, any facts presented for the first time in the aforementioned documents are not considered for purposes of dismissal.

*$493,850.00 in U.S. Currency*, 518 F.3d 1159, 1167-1168 (9th Cir. 2008). The court in *$493,850.00* held on a motion for summary judgment that it is the "government's burden to get in the courthouse door by presenting evidence that, at the time it filed the complaint, it had 'reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion.'" *$493,850.00*, 518 F.3d at 1168; (quoting *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 490-491 (9th Cir. 1990).)  Probable cause may be based only upon information gathered before the forfeiture action was instituted. *United States. v. 186,416.00 in U.S. Currency*, 590 F.3d 942, 949 (9th Cir 2009) (citing *493,850.00,* 518, F.3d at 1169.)

The Ninth Circuit routinely considers evidence outside of the complaint to determine whether probable cause existed to institute an action. *186,416.00*, 590 F.3d at 949 (the court considered declarations and knowledge attributed to law enforcement prior to filing of the complaint.); *$493,850.00*, 518 F.3d at 1169 (the court considered all evidence legally gathered by law enforcement prior to filing of the complaint.); *United States v. 191,910.00 in U.S. Currency*, 16 F.3d 1051, 1065-1066 (9th Cir. 1994).

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court is limited to the face of the complaint and, in limited circumstances, the documents incorporated by reference. The court, therefore, cannot consider all information gathered by the government prior to the institution of the forfeiture action in a motion to dismiss for failure to state a claim. Accordingly, the correct procedural vehicle for claimants to challenge the probable cause to believe that the seized $158,000.00 in U.S. currency is

linked to illegal transactions in controlled substances is summary judgment. *See U.S. v. 50,040 in U.S. Currency*, 2007 WL 1176631 at *3 (N.D. Cal 2007); (citing *U.S. v. $639,470.00 in U.S. Currency*, 919 F.Supp. 1405, 1417. (C.D. Cal. 1996) ("Rule E(2) does not require the government to meet, at the pleading stage, its ultimate trial burden of showing probable cause for forfeiture; rather, the government's complaint must establish only a reasonable belief that the government can show probable cause for forfeiture at trial.").

B. The Government's Complaint States Sufficiently Detailed Facts to Support A Reasonable Belief That The Government Will Be Able To Meet Its Burden Of Proof At Trial

The government alleges six bases for the proposition that the $158,000.00 in U.S. Currency seized in this case is subject to forfeiture. The allegations are that the property was (1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to such an exchange, (3) used or intended to be used to facilitate a violation of the federal drug laws, pursuant to 21 U.S.C. § 881, (4) used or intended to be used, or involved in, or intended to be involved in, the facilitation of a violation of 31 U.S.C. § 5316, (5) proceeds traceable to a violation of 31 U.S.C. § 5316, or (6) used, or intended to be used, or involved in, or intended to be involved in, the facilitation of a violation of 31 U.S.C. § 5316(a). (Complaint ¶¶ 17-31.) This court will now evaluate whether the government's complaint supports a reasonable belief that the government can meet its burden at trial as to each of the claims for relief.

*1. Furnished or Intended to be Furnished in Exchange for a Controlled Substance, Traceable to Such an Exchange, or Used or Intended to be Used to Facilitate a Violation of the Federal Drug Laws.*

The Government's First Claim for Relief alleges that the defendant currency constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance.

21 U.S.C. § 881(a)(6) provides as follows:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

The Government's complaint alleges a number of factors that tend to prove that the $158,000.00 seized were related to a transaction involving controlled substances. First, the face of the complaint shows that the seized property was in the amount of $158,000.00 (Complaint ¶ 12). The Ninth Circuit has recognized that a large amount of money alone may be "strong evidence that the money was furnished or intended to be furnished in return for drugs." *United States v. Approximately $77,000.00 in U.S. Currency,* 2012 WL 1196498 at *10 (E.D. Cal. 2012) (quoting *United State. v. $29,959.00 in U.S. Currency*, 931 F.2d 549, 553 (9th Cir. 1991); see also *United States. v. $93,685.61 in U.S. Currency*, 730 F.2d 571, 572 (9th Cir. 1984).). In *$77,000.00* the court found that $77,000.00, in the totality of the circumstances, was strong evidence that the money was furnished or intend to be furnished for drugs. *$77,000.00*, 2012 WL 1196498 at *10. Here, the amount seized was more than twice the amount seized in *$77,000.00,*

where the court found that there was strong evidence that the money was furnished or intended to be furnished for drugs.

Second, Mr. Ahn's hand was trembling when he passed his license and registration information to the detective (Complaint ¶ 9). In *United States v. $49,576.00 in U.S. Currency,* 116 F.3d 425, 428 (9th Cir. 1997), the court considered the driver's nervous behavior as evidence of some illegal activity, although not necessarily drug trafficking. This factor alone does not indicate a connection with the exchange of drugs but it must be considered.

Third, Mr. Ahn had made a single day trip from Los Angeles to Sacramento (Complaint ¶ 9). Detectives found Ahn's short turnaround trip suspicious. (Complaint ¶ 10). While drug courier profiling alone is insufficient to establish probable cause, courts have used it as a factor in considering the totality of the circumstances. *United States v. $22,474.00 in U.S. Currency,* 246 F.3d 1212, 1216 (9th Cir.2001); *United States v. $80,010.00 in U.S. Currency*, 2009 WL 7520021 at *8 (C.D. Cal. July 9, 2009). Although the short turnaround trip by Ahn taken in a vacuum, would not be probative based on the totality of the circumstances it tends to indicate that Mr. Ahn and the money he was carrying were involved in the drug trade.

Fourth, when asked whether there were weapons, narcotics, or large sums of money inside the vehicle Mr. Ahn answered that there were not. (Complaint ¶ 10). The currency was wrapped in foil and vacuum sealed in a plastic bag inside of an orange and blue backpack. (Complaint ¶¶ 11-12). Concealing and lying about a large amount of money supports the inference that the money is related to narcotics trafficking. *United*

*States v. Wilson*, 458 F. App'x 637, 638; 2011 WL 5545367 (9th Cir. 2011)[5] (*citing United States v. $215,300 U.S. Currency,* 882 F.2d 417, 419 (9th Cir.1989)). Additionally, the manner in which the currency is packaged may support an inference that the money is related to narcotics trafficking if it is packaged in a manner designed to frustrate detection by narcotic detecting canines. *Approximately $77,000.00 in U.S. Currency*, 2012 WL 1196498 at *10; *see also United States v. $42,500 in U.S. Currency*, 283 F.3d 977, 982 (9th Cir. 2002) ("[C]ellophane is not a normal repository for carrying large amounts of money. Rather … [it] is commonly used to conceal the smell of drugs and avoid detection by drug dogs."). Here, the currency was wrapped in aluminum foil and then vacuum sealed in plastic bags. Such an action supports the strong inference that the currency was designed to avoid detection by drug detection canines.

Fifth, Mr. Ahn had three cellular telephones in his vehicle (Complaint ¶ 10). The Central, Northern, Southern and Eastern Districts of California have all considered the possession of multiple cell phones as evidence tending to indicate that the possessor is involved in the drug trade. *See United States v. $3,064.00 in U.S. Currency,* 2011 WL 2181482 at *2 (S.D. Cal. June 2, 2011); *United States v. Approximately $194,752 in U.S. Currency*, 2011 WL 3642509 at *4 (N.D. Cal. Aug 19, 2011); *George v. Uribe*, 2012 WL 1079545 at *6 (C.D. Cal. Feb 16, 2012); *United States v. Tony Quy Le*, 2011 WL 39125 at *4 (E.D. Cal. Jan. 5, 2011).

---

[5] Cited pursuant to Ninth Circuit Rule 36-3(b)

Sixth, the narcotic detecting canine "Tag" alerted to "the odor of narcotics" in the interior cargo area of the vehicle and on the backpack containing the seized currency in question. (Complaint ¶ 12). Because this Court is presently ruling on a motion to dismiss for failure to state a claim, the Court will not consider the declaration of Fresno County Sheriff's Detective Philip Lodge as it relates to whether "Tag" is a sophisticated canine – a dog that would react only to ephemeral by-product of narcotics and not to commonly circulated currency – to show that the currency is substantially connected to illegal drug activity. *See United States v. $42,500 in U.S. Currency*, 283 F.3d 977, 982 (9th Cir. 2002); *United States v. $22,474 in U.S. Currency*, 246 F.3d 1212, 1216 (9th Cir. 2001). For purposes of this motion to dismiss it is sufficient for this court to recognize that the face of the pleadings allege that "Tag is both California Narcotic Canine Association certified, and P.O.S.T. certified, as a narcotic detection canine … is trained to detect the odor of controlled substances … [and] gave a positive alert to the odor of narcotics to the interior cargo area of the vehicle, to the cardboard box, and to the orange and blue backpack," within which the currency was found. The three separate positive alerts to the vehicle tend to indicate that "Tag" did not merely alert to contaminated currency.[6] The positive alerts tend to support the reasonable belief that the government will be able to meet its burden at trial. If the claimants seek to prove that the canine in question would

---

[6] Claimant places much weight on the distinction between *$22,474 in U.S. Currency*, 246 F.3d 1212 (9th Cir. 2001), and *$30,060 in U.S. Currency,* 39 F.3d 1039 (9th Cir. 1994). Claimants suggest that since the court in *$30,060* found that a large percentage of the currency in Los Angeles was contaminated and because Mr. Ahn claimed to be headed for Los Angeles that the court should presume that the currency at issue is equally contaminated. This runs contrary to Mr. Ahn's claim that the currency was brought from Korea by Young Kim.

alert to most currency because it is contaminated, the proper vehicle to do so is summary judgment.

Seventh, the denominations of the currency seized were exclusively twenty and hundred dollar bills (Complaint ¶ 12). When courts in this Circuit give weight to the denominations of the currency seized in relation to a drug transaction it is generally when the currency is of small denominations, in non-uniform bundles, bundled with rubber bands and without bank wrappers. *See United States v. Sims,* 2012 WL 3822117 at *3 (N.D. Cal. Sept. 4, 2012); *United States v. Real Property Located in North Hollywood,* 2009 WL 3770639 at *4 (C.D. Cal. Nov 10, 2009); *United States v. Approximately $17,872 in U.S. Currency*, 2009 WL 2990496 at *3 (N.D. Cal. Sept. 11, 2009). In this case, the court finds no specific merit to the government's argument that the currency's denominations being only twenty and hundred dollar bills tends to indicate that the currency was related to a drug transaction.

When asked how much money was in the package, Mr. Ahn said that there would have to have been at least $150,000.00 because, "that is the minimum you would need to put for a down payment to purchase a house." (Complaint ¶ 13) The Ninth Circuit has considered the situation where the explanation of the origin and purpose of the funds seized for forfeiture are so implausible or logically inconsistent that the story told tends to indicate that the funds were acquired by illegal means. *See Currency, U.S. $42,500.00*, 283 F.3d at 984 (9th Cir. 2002); *see also Approximately $77,000.00 in U.S. Currency*, 2012 WL 1196498 at *12 ("Even though the claimant was able to account for the fact that he could have amassed a large amount of cash … his failure to address or explain the

use of his vehicle's trunk as a bank … cannot overcome the evidence proffered by the Government in the form of a sophisticated dog sniff, large sum of money, and the packing and bundling of that money.") Mr. Ahn alleged that the currency was to be deposited at a bank in Los Angeles, but that he had not decided which bank to deposit the currency in yet. When questioned as to why he did not deposit the funds in a Sacramento bank Mr. Ahn stated "this was how he does business." (Complaint ¶ 13). Mr. Ahn's story that he got $150,000.00 from the sale of a Korean business that was to be used for a down payment on a house because "that is the minimum you would need to put a down payment on a house," is implausible. This Court does not make a factual finding that the story that Mr. Ahn told detectives was not true. The Court merely finds that the logically inconsistent story alleged in the complaint tends to indicate that the currency was probably related to a drug transaction.

Based on consideration of the totality of the circumstances, the Government's complaint supports a reasonable belief that the government can meet its burden at trial as to Government's First Claim for Relief (i.e. that the currency seized constitutes a thing of value furnished or intended to be furnished in exchange for a controlled substance by a preponderance of the evidence).

*2. Used or intended to be used, involved in or intended to be involved in the facilitation of a violation of 31 U.S.C. § 5316, or traceable to a violation of 31 U.S.C. § 5316.*

The Government's Second, Third, and Fourth Claims for Relief allege that the currency seized was smuggled into the United States in violation of federal law.

"Any person who knowingly transports, is about to transport or has transported monetary instruments of more than $10,000 at one time to a place in the United State from a place outside the United States must file a report with the Secretary of the Treasury, indicating the legal capacity of the filer, the origin, destination, and route of the monetary instruments, the identity of the owner(s) or receiver(s) of the property and the amount and kind of monetary instruments transported." 31 U.S.C. § 5316(a-b). Currency involved in or traceable to a violation of the aforementioned section may be seized and forfeited to the United States in accordance with 18 U.S.C. § 981(a)(1)(A). 31 U.S.C. § 5317(c)(2).

Any person, with the intent to evade a currency reporting requirement, who knowingly conceals more than $10,000 in currency in any conveyance, article of luggage, merchandise or other container and transports such currency from a place outside the United States to a place within the United States shall be guilty of a currency smuggling offense. 31 U.S.C. § 5332(a)(1). Any property involved in a currency smuggling offense as defined above and any property traceable to such a violation may be seized and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A). 31 U.S.C. § 5332(c)(1-2).

Mr. Ahn's statement to detectives indicated that Mr. Young Kim had brought the currency into the United States tucked between his clothing in his suitcase. (Complaint ¶ 13). This statement supports the reasonable inference that the currency seized was smuggled into the United States in violation of 31 U.S.C. § 5332(a)(1).

Since Claimants do not dispute the Government's Second, Third, and Fourth Claims for Relief, the court need not provide further analysis on whether the court should dismiss these claims. At issue is only the First Claim. As discussed above, the First Claim does state a claim.

## ORDER

Accordingly, Claimants' motion to dismiss for failure to state a claim is DENIED.

IT IS SO ORDERED.

Dated:   March 15, 2013

_____
SENIOR DISTRICT JUDGE